## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**STEIN & NIEPORENT LLP**
David Stein (DS 2119)
1441 Broadway, Suite 6090
New York, New York 10018
(212) 308-3444
dstein@steinllp.com

Attorneys for Defendant

| | |
|---|---|
| Frankie Monegro, on behalf of himself and all others similarly situated, | |
| Plaintiff, | DOCKET NO. 21-cv-3093 (GBD)(SN) |
| - vs. – | |
| I-Blades, Inc., | |
| Defendant. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

**<u>TABLE OF CONTENTS</u>**

Page

PRELIMINARY STATEMENT................................................................................................. 1

STATEMENT OF FACTS..................................................................................................... 1

LEGAL ARGUMENT ........................................................................................................ 3

    I.     Legal standard for summary judgment .................................................................. 3

    II.    This court lacks subject matter jurisdiction over plaintiff's claims because they are moot................................................................................................................ 4

    III.   Plaintiff lacks standing to bring his claims because he has failed to establish an injury in fact........................................................................................................ 6

    IV.   Defendant is entitled to summary judgment because I-Blades, Inc.'s website is not a place of public accommodation under the ADA.........................................10

    V.    Defendant is entitled to summary judgment on plaintiff's city claims for the same reasons it is entitled to summary judgment on his ADA claims................................19

    VI.   Plaintiff is not entitled to a recovery of "civil penalties and fines" or punitive damages under the NYCHRL........................................................................19

CONCLUSION ..........................................................................................................20

TABLE OF AUTHORITIES

Cases                                                                                                          Pages

*Anderson v. Liberty Lobby, Inc.,*  477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).......... 3, 4

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) ....................................................5-6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 9

*Bellamy v. City of New York*, 914 F. 3d 727 (2nd Cir. 2019) ...................................................... 4

*Bernstein v. City of New York*, 621 F. App'x 56 (2nd Cir. 2015) .............................................. 8

*Brintley v. Aeroquip Credit Union*, 936 F.3d 489 (6th Cir. 2019) ........................................... 5

*Calcano v. Swarovski North America Limited*, 2022 WL 1788305 (2nd Cir. 2022)............ 8-9, 10

*Camarillo v. Carrols Corp.*, 518 F.3d 153 (2nd Cir. 2008)....................................................... 7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ............................ 3

*Chauca v. Abraham*, 30 N.Y.3d 325, 89 N.E.3d 475 (2017)...........................................19-20

*Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94 (2d Cir. 2010)................................. 6

*Cooper v. New York State Dep't of Lab.*, 819 F.3d 678 (2nd Cir. 2016) ...........................................18

*CTS Corp. v. Waldburger*, 573 U.S. 1, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014) ..............................18

*Diaz v. Kroger Co.*, 2019 WL 2357531 (S.D.N.Y. June 4, 2019)................................................... 5

*Dominguez v. Athleta LLC*, 2021 WL 918314 (S.D.N.Y. Mar. 10, 2021) ............................................ 8

*Dominguez v. Grand Lux Cafe LLC*, 2020 WL 3440788 (S.D.N.Y. June 22, 2020). ....................... 8

*Dominguez v. Pizza Hut of Am., LLC*, 2020 WL 3639977 (S.D.N.Y. July 6, 2020) ........................ 8

*Falls Riverway Realty, Inc. v. City of Niagara Fall*754 F.2d 49 (2d Cir. 1985) ............................... 4

*Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3rd Cir. 1998),................................................15

*Friends of the Earth, Inc., v. Laidlaw Environmental Services (TOC) Inc.*,
        528 U.S. 167 (2000).................................................................................................... 7

*Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013)................................................. 4

*Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266 (11th Cir.)
        *vacated as moot*, 21 F.4th 775 (11th Cir. 2021). ........................................................16

*Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 652-654 (4th Cir. 2019) ....................... 5

*Guglielmo v. Nebraska Furniture Mart, Inc.*, 2020 WL 7480619  (S.D.N.Y. Dec. 18, 2020)........ 5

*Harty v. Greenwich Hosp. Grp., LLC*, 536 F. App'x 154 (2nd Cir. 2013) ................................. 8

*Harty v. W. Point Realty, Inc.*, 28 F.4th 435 (2nd Cir. 2022) ....................................................... 8

*Home Ins. Co. v. American Home Prods. Corp.*,
    75 N.Y.2d 196, 551 N.Y.S.2d 481, 550 N.E.2d 930 (1990))......................................20

*Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638 (2d Cir. 1998)....................................... 4

*Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118 (2nd Cir. 2006) .................................19

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2nd  Cir. 2013)  .......................................7

*Krist v. Kolombos Rest. Inc.,* 688 F.3d 89 (2nd Cir. 2012)  ........................................................11

*Lujan v. Defenders of Wildlife*, 50 U.S. 555 (1992). ...................................................................7

*Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530 (5th Cir. 2016) ...................................15

*Makarova v. United States*, 201 F.3d 110 (2nd Cir. 2000).............................................................4

*Martinez v. MyLife.com, Inc.*, 2021 WL 5052745 (E.D.N.Y. Nov. 1, 2021) ....................................14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ............................................ 3

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2nd Cir. 2016) ........................................................7

*Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2nd Cir. 1999),
    *opinion amended on denial of reh'g*, 204 F.3d 392 (2nd Cir. 2000).....................................13

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2nd Cir. 2000) ........................................19

*Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006 (6th Cir. 1997) ..................................................16

*R.C. Bigelow, Inc. v Unilever, N.V.*,
    867 F.2d 102 (2nd Cir. 1989), *cert denied* 493 U.S. 815, 110 S.Ct. 64 (1989) .................. 3

*Range v. 535 Broadway Grp. LLC*, 2019 WL 4182966 (S.D.N.Y. Sept. 3, 2019)...........................19

*Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019).................................................16

*Romero v. 88 Acres Foods, Inc.*, 2022 WL 158686 (S.D.N.Y. Jan. 18, 2022). ..................................17

*Small v. Gen. Nutrition Companies, Inc.,* 388 F. Supp. 2d 83 (E.D.N.Y. 2005).  ................................8

*Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) ...................................................6-7

*Suris v. Collive Corp.,* 2022 WL 542987, at *6 (E.D.N.Y. Jan. 10, 2022), *report and recommendation adopted*, 2022 WL 541765 (E.D.N.Y. Feb. 23, 2022) ...........................20

*Suris v. Gannett Co.*, 2021 WL 2953218 (E.D.N.Y. July 14, 2021) ......................................................14

*United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) ......................... 3

*United States v. Tohono O'Odham Nation*
    563 U.S. 307, 131 S. Ct. 1723, 179 L.Ed.2d 723 (2011). ..........................................................14

*Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000) ...................................16

*Winegard v. Newsday LLC*, 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021) ...............................12-14

*Woodman v. WWOR-TV, Inc.*, 411 F. 3d 69 (2nd Cir. 2005) .......................................................... 4

<u>Statues and Rules</u>

42 U.S.C. § 12181(7) ........................................................................................................... 11, 12, 13, 16

28 U.S.C. § 1367(c) ......................................................................................................................19

28 CFR Appendix C to Part 36 .................................................................................................12

Fed. R. Civ. P. 56 ................................................................................................................... 3

NYC Admin Code. Title 8, Ch. 1, § 8-127(a) ..........................................................................19

## **PRELIMINARY STATEMENT**

Plaintiff Frankie Monegro asserts that the website of defendant I-Blades, Inc., www.i-blades.com, is not equally accessible to blind and visually-impaired consumers in violation of the Americans with Disabilities Act ("ADA"). I-Blades disputes that its website ever denied equal access to plaintiff based on his disability, but assuming arguendo that it did, because it is now impossible for plaintiff to do business with I-Blades, plaintiff's claims are moot, and defendant is entitled to summary judgment. Furthermore, plaintiff cannot establish an injury in fact, resulting in a lack of standing for his case, providing a second reason why defendant is entitled to summary judgment.  Moreover, because I-Blades, Inc. operates a website but does not have a public-facing physical location, it is not a place of public accommodation under the Americans with Disabilities Act, and therefore even if plaintiff had standing, and even if the case were not moot, plaintiff has failed to state a claim for relief.  Finally, plaintiff fails to establish his entitlement to several of the forms of relief he seeks, asking for remedies that are not even available under applicable laws under which this suit was brought

## **STATEMENT OF FACTS[1]**

Plaintiff is a resident of Manhattan who alleges that he is a visually impaired and legally blind individual with a qualifying disability under the Americans with Disabilities Act. He uses specialized screen reading software such as Non Visual Desktop Access ("NVDA") to enable him to access information on the Internet.

Monegro claims that on several unspecified occasions, with the last being in June 2021, he visited the website located at www.i-blades.com to purchase a phone case.

---

[1] These facts are either taken from the amended complaint or from the Declaration of Jorge Fernandes submitted with this motion.

However, when he did so, he allegedly encountered a series of vaguely described virtual barriers that purportedly prevented him from being able to complete a purchase of some unspecified product.  He never informed I-Blades, Inc. of those barriers, nor did any other individual.  (S.U.M.F. ¶ 4)

I-Blades.com, a California-based company (S.U.M.F. ¶ 1), sells smartphone cases and a few related accessories on the Internet; it has no physical brick and mortar business at all.  (S.U.M.F. ¶ 2)  It is a small company with only two employees (S.U.M.F. ¶ 3), and it has a very low sales volume.  Relevantly for the purposes of this lawsuit, it did only a little more than $3,000 worth of business in all of the state of New York in all of 2020.  (S.U.M.F. ¶¶ 6-7)  Because it generated so little revenue from the state of New York, it made the determination as a result of the instant lawsuit that doing business in the state of New York, and subjecting itself to such lawsuits, was not merited under a cost-benefit analysis.  (S.U.M.F. ¶ 8)  Thus, it made the decision to cease doing such business.  Its website — again, the only place where it conducts business — no longer permits New York residents to shop there.  (S.U.M.F. ¶¶ 9-11)  From the perspective of a New Yorker, the website is purely informational; an attempt to place an order results in a denial.  (S.U.M.F. ¶ 12)  It is no longer possible for any individual in the state of New York, sighted or visually impaired, to do business with I-Blades; even assuming that the site posed accessibility barriers, an attempt by Mr. Monegro to use the website would have the same result as an attempt by his non-visually impaired neighbor to do so.  Moreover, I-Blades, Inc. has no intention of ever doing business in the state of New York in the future.  (S.U.M.F. ¶¶ 12-13)

## **LEGAL ARGUMENT**

### I.      **Legal standard for summary judgment.**

The Federal Rules of Civil Procedure provide for summary adjudication when the record shows "that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). One of the principal purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The moving party may discharge its burden of showing that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548, 91 L.Ed.2d 265. If the moving party demonstrates this, the burden of proof shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Genuine issues are those that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." *Id*. at 250, 106 S.Ct. 2505, 91 L.Ed.2d 202.

In weighing evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). See also, *R.C. Bigelow, Inc. v Unilever, N.V.*, 867 F.2d 102, 107 (2nd Cir. 1989), cert denied 493 U.S. 815, 110 S.Ct. 64 (1989). The evidence presented by the parties must be admissible. Fed.R.Civ.P. 56(c).

Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat a summary judgment motion. *See Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 57 (2nd Cir. 1985). The non-moving party must produce "more than a scintilla of evidence" and create "more than some metaphysical doubt as to the material facts." *Bellamy v. City of New York*, 914 F. 3d 727, 754 (2nd Cir. 2019). Summary judgment is appropriate if the evidence favoring the non-moving party is merely colorable or is not significantly probative. *See Woodman v. WWOR-TV, Inc.*, 411 F. 3d 69, 88 (2nd Cir. 2005)(*quoting Liberty Lobby*, 477 U.S. at 249-50).

## II. This court lacks subject matter jurisdiction over plaintiff's claims because they are moot.

This Court must dismiss a claim for lack of subject matter jurisdiction "when the district court lacks that statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2nd Cir. 2000). Article III, § 2 of the United States Constitution limits the jurisdiction of the federal courts to matters that present actual "cases and controversies;" therefore, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis*, 1523 S. Ct. at 1528. Thus, factual changes made by a defendant after litigation commences can moot a case. "A case becomes moot when interim relief or events have eradicated the effects of the defendant's act or omission, and there is no reasonable expectation that the alleged violation will recur." *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998)).

In the instant case, there is no reasonable expectation that the alleged violation will recur. Even if I-Blades.com contained accessibility barriers at one point, and even if those barriers had not been remedied — which defendant certainly does not concede — those barriers cannot prevent Mr. Monegro from completing a transaction on the website, because there is no possibility of him undertaking a transaction on the website. Because Mr. Monegro lives in New York, he can no longer do business with I-Blades.

Courts have granted motions to dismiss in cases of this nature when cases are mooted by subsequent events. *See, e.g., Guglielmo v. Nebraska Furniture Mart, Inc*., 2020 WL 7480619 (S.D.N.Y. Dec. 18, 2020)(case dismissed where defendant remediated the website and eliminated accessibility issues); *Diaz v. Kroger Co*., 2019 WL 2357531 (S.D.N.Y. June 4, 2019)(same). In each of those cases, the fact that the New York plaintiffs could not do business with the remote defendants that did not sell in New York were additional factors leading to dismissal, although in those instances the courts analyzed that issue as a matter of personal jurisdiction. Because I-Blades formerly did sell to customers in New York, it cannot raise that same defense even though it no longer does so. But other cases squarely addressed the fact pattern in which it was impossible for the plaintiff to do business with defendants, and found that this required dismissal. *See, e.g., Brintley v. Aeroquip Credit Union*, 936 F.3d 489, 491 (6th Cir. 2019) (plaintiff who was not eligible to be a customer of the defendant lacked standing to bring an ADA claim); *Griffin v. Dep't of Lab. Fed. Credit Union*, 912 F.3d 649, 652-654 (4th Cir. 2019)(case dismissed where plaintiff was legally ineligible to do business with defendant). To be sure, those cases involved standing, because the plaintiffs therein were never entitled to do business with defendants. This case involves mootness, due to a change in circumstances that arose after the filing of the instant suit. But

mootness is simply "standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n. 22 (1997)

To be sure, the matter is not as simple as a defendant ceasing its conduct; "factual changes made by a defendant after litigation has commenced cannot render a case moot unless it is absolutely clear the defendant cannot resume the allegedly offending conduct." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010). Otherwise, it would be too easy for a defendant to moot a case only for long enough for the case to be dismissed. But this case does not represent the common scenario of a business being sued and then conclusorily claiming that it has gotten its website into compliance; in that scenario, even if such a claim is true there is of course no guarantee that routine updates to the site would not cause it to become non-compliant again. Rather, I-Blades took a specific step to make it *impossible* for any barriers on the site to affect the plaintiff.  And I-Blades provides specific details to explain why this step will not be reversed: because the finances do not justify doing so.  I-Blades simply has no incentive to reverse its decision and expose itself to future liability from Mr. Monegro or the dozen other serial plaintiffs in this district that specialize in cases of this nature.

### III. Plaintiff lacks standing to bring his claims because he has failed to establish an injury in fact.

Even if the complaint were not moot, this Court should dismiss Mr. Monegro's claims because he has not met his burden of showing that he has suffered the "injury in fact" required by Article III of the constitution. Here, Plaintiff bears the burden of establishing the elements of standing because he has invoked federal jurisdiction by bringing a claim under the ADA. *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016)

In order to establish Article III standing, a plaintiff must sufficiently show: "(l) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc., v. Laidlaw Environmental Services (TOC) Inc.*, 528 U.S. 167 , 180-81 (2000). "A harm is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 50 U.S. 555, 560 n.l (1992). An injury is ''concrete" if it is "de facto"; that is, it must actually exist rather than being only "abstract." *Spokeo*, 36 S.Ct. at 1548. In *Spokeo*, the plaintiff brought a claim alleging a technical violation of the Fair Credit Reporting Act, but asserted no injury beyond that violation. The Supreme Court held that a party does not "automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 1549.

Mr. Monegro fails to establish an injury-in-fact under the ADA because he cannot show the third factor: redressability. Because the only remedy under the ADA is injunctive relief, a plaintiff has standing only when he establishes, inter alia, that "it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [services] to plaintiff's home, that plaintiff **intended to return** to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2nd Cir. 2013)(*citing Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (*per curiam*)(emphasis added). That is because without the "real or immediate threat of injury," injunctive relief is not available. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2nd Cir. 2016)

The plaintiff must establish specific facts that "show a plausible intention or desire to return to the place but for the barriers to access." *Small v. Gen. Nutrition Companies, Inc.,* 388 F. Supp. 2d 83, 86 (E.D.N.Y. 2005). As noted above, the Second Circuit has laid out several factors to consider. In the context of a website, "proximity" is not a meaningful concept, but plaintiff cannot simply assert vague claims that "in the future" the plaintiff intends to use the website to complete a transaction. *Harty v. W. Point Realty, Inc.*, 28 F.4th 435 (2nd Cir. 2022)("'[S]ome day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent' injury" that Article III requires."); *Dominguez v. Pizza Hut of Am., LLC*, 2020 WL 3639977, at *2 (S.D.N.Y. July 6, 2020)(assertion of intent to return when alleged barriers have been rectified is insufficient.) Rather, to establish this factor, "[t]he plaintiff must allege specific facts that 'show a plausible intention or desire to return to the place but for the barriers to access.'" *Dominguez v. Grand Lux Cafe LLC*, 2020 WL 3440788, at *3 (S.D.N.Y. June 22, 2020). See, e.g., *Harty v. Greenwich Hosp. Grp., LLC*, 536 F. App'x 154, 155 (2nd Cir. 2013) (pleading that one travels frequently does not show intent to return to a specific hotel); *Bernstein v. City of New York*, 621 F. App'x 56, 58–59 (2nd Cir. 2015)(alleging that one has visited Central Park many times in the past is not sufficient to show intent to return in the future); *Dominguez v. Athleta LLC*, 2021 WL 918314, at *3 (S.D.N.Y. Mar. 10, 2021)("indefinite" plan to return to store is conclusory; furthermore, fact of filing "at least 24 nearly identical complaints against other retailers... undermines the sincerity of Plaintiff's alleged intent to return").

Moreover, just last month, the Second Circuit addressed the very question of the required showing(albeit in the context of gift cards). It explained that merely parroting the

Second Circuit's language from *Kreisler*—proximity, being a past customer, intent to return—is really "nothing more than 'legal conclusion[s] couched as ... factual allegation[s].'" *Calcano v. Swarovski North America Limited*, 2022 WL 1788305 at *4 (2nd Cir. 2022). The Second Circuit *rejected* the idea that a court is required to accept vague assertions, and pointed out that to "nudge [plaintiffs'] claims 'across the line from conceivable to plausible,'" *Id.* at *5 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)) they needed to, e.g., provide details of past visits or the frequency of such visits (rather than just saying "on prior occasions"), explain what items they purchased in the past, why they want to purchase particular goods now, and why they would do so "immediately" when those goods became accessible. *Calcano*, 2022 WL 1788305 at *5. Plaintiff herein provides none of that sort of specificity, *or any other relevant facts*.

Here, Mr. Monegro does not satisfy this test. He has not, for instance, identified a specific date to return beyond "in the future" — the same generic formulation routinely rejected by the courts in ADA cases. There's no evidence he made any visits to the site other than the two driven by this litigation — one in March 2021, right before filing the suit, and one on June 14, 2021, right before filing the amended complaint. There's nothing to suggest he has ever bought a phone case online before — let alone the frequency with which he has done so — which would make it more plausible that he would buy such goods in this instance. He does not identify any *specific* product he intends to buy, beyond a "phone case." Nor does is there anything to establish why plaintiff wants to buy such a product *from defendant* — especially given that he states that the access barriers on the site prevented him from so much as "understand[ing] the different product details for the products" in the first place! — and why he would wait to purchase it at some unspecified time in the future rather

than doing so in the present from any other retailer. (Precisely *because* proximity is not a factor on the Internet, there would be little reason for an individual to buy a generic product like a phone case only from one specific website, in contrast to an individual favoring a particular brick and mortar business because it was close to the individual's home or work.) (Defendant does not contend that each of these facts is required, or that other facts would not be relevant; this is merely an illustrative list.) The need for specificity is particularly acute in the case of a serial plaintiff who simply files scores of nearly identical lawsuits, exploiting the ease of facilely claiming that one intends to visit a website.[2] In *Calcano*, the Second Circuit explained, "Third, we cannot ignore the broader context of Plaintiffs' transparent cut-and-paste and fill-in-the-blank pleadings. The four Plaintiffs before us filed eighty-one of over 200 essentially carbon-copy complaints between October and December 2019. All of the complaints use identical language to state the same conclusory allegations." *Calcano*, 2022 WL 1788305 at *5. In saying that, the Second Circuit did of course not rule that being a serial plaintiff automatically invalidates cases of this nature; it merely noted that "[t]his backdrop of Plaintiffs' Mad-Libs-style complaints further confirms the implausibility of their claims of injury." *Id.* at *6.

### IV.   Defendant is entitled to summary judgment because I-Blades, Inc.'s website is not a place of public accommodation under the ADA.

The Americans with Disabilities Act is undeniably a broad statute, but it nevertheless has its limits; Title III — the relevant portion of the statute — applies only to a "place of

---

[2] A search of PACER — of which the Court can take judicial notice — reveals that plaintiff filed 158 cases of this nature in this district in just a one year period. And all are equally vague, or more so. (Indeed, in the original complaints in all of them, Mr. Monegro did not even plead any intent to return.)

public accommodation." Because I-Blades, Inc. does not operate a place of public accommodation — its only business is the website www.i-blades.com — plaintiff has failed to state a claim with respect to I-Blades, Inc.. Plainly speaking, www.i-blades.com is not a place of public accommodation.

To state a claim under Title III, the plaintiff must establish "(1) that he or he is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against the plaintiff within the meaning of the ADA." *Krist v. Kolombos Rest. Inc.,* 688 F.3d 89, 95 (2nd Cir. 2012) The first and third elements (for the purpose of this motion) are not disputed, but the second is where plaintiff's case is insufficient.  Nothing shows that I-Blades, Inc.'s website is a "place of public accommodation" – an indispensable element of his cause of action - in order to establish a Title III discrimination claim.

Plaintiff can offer nothing but conclusory assertions that defendant's website is a "public accommodation within the definition of" Title III of the ADA, 42 U.S.C. § 12181(7). However, plaintiff can establish no facts to explain *how* defendant's website fits within that statutory section, which provides a detailed list of the types of entities that are considered "public accommodations" for purposes of Title III:

> (A) an inn, hotel, motel, or other place of lodging . . .
> (B) a restaurant, bar, or other establishment serving food or drink;
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
> (D) an auditorium, convention center, lecture hall, or other place of public gathering;
> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;
(H) a museum, library, gallery, or other place of public display or collection;
(I) a park, zoo, amusement park, or other place of recreation;
(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7). The regulations promulgated by the Department of Justice echo that list, and then emphasize that this list is not merely a list of exemplars, but a *complete* list: "In order to be a place of public accommodation, a facility . . . **must** fall within one of these 12 categories." 28 CFR Appendix C to Part 36 (Emphasis added.) This list explicitly includes only physical places, open to the public; websites, unconnected to any physical place of business, are conspicuous only by their absence. Since, as noted above, defendant does not have a public-facing physical place of business, it is not included in the above statutory definition and is exempt from Title III coverage.

To be sure, the Second Circuit has never spoken to the issue raised here — whether a website with no nexus to any public-facing physical location is a place of public accommodation — and there is a split of authority, both nationwide and within the district courts in this circuit, as to that issue. But defendant submits that Judge Komitee's careful decision in *Winegard v. Newsday LLC*, 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021) is most compelling. After first noting that the phrase "place of public accommodation" has been used for decades to refer to physical places rather than all types of businesses, Judge Komitee examined — as have the Circuit Courts ruling against plaintiff's interpretation of the law — the specific language of the ADA. He pointed out that the statute was very specific, listing 50 specific examples of the types of businesses covered, and that at least forty nine of them

12

"indisputably relate to physical places." *Id.* at *3. (The fiftieth, which some courts said referred to a non-physical place, was a "travel service," but as Judge Komitee noted, there is no reason to assume that this does not refer to a physical travel agency also. *Id.* at n.1) Judge Komitee also noted that Congress made specific word choices going out of its way to indicate that it was considering only physical locations — for example, "the office of an accountant or lawyer" rather than "accounting firm or law firm," and "office of a health care provider" rather than "health care practice." He further noted that the statute expressly uses the phrase "place of" public accommodation, rather than just "public accommodation," and the term "place" is generally understood to mean a physical place.

Judge Komitee then examined *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2nd Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 392 (2nd Cir. 2000), the Second Circuit's decision upon which so much of this Circuit's caselaw in this area of the law rests. *Pallozzi* did not have anything to do with websites, but it held that since Title III expressly applies to "insurance offices," 42 U.S.C. § 12181(7)(F), it also applies to the insurance policies issued by those insurance offices. And since an insurance policy is not a physical location — the argument by plaintiffs in this space goes — *Pallozzi* must be understood as holding that the ADA reached businesses beyond physical locations. But Judge Komitee noted that *Pallozzi* did *not* hold that the ADA applied to non-physical places. Instead, it held that given that the case involved a physical place of public accommodation indisputably covered by the ADA (an insurance office), the ADA covered discrimination in the provision of goods and services *of* that place of public accommodation. *Id.* at *6-7. In other words, under the analysis of *Pallozzi*, the existence of a physical place of public accommodation is a "condition precedent" to application of Title III to the goods and services sold by that place. *Newsday,*

2021 WL 3617522, at *7.

In addition, Judge Komitee considered and rejected two other related arguments sometimes relied on by courts in this area: that Congress could not have anticipated the Internet (and therefore its failure to include non-physical businesses in its coverage should not be interpreted as an intent to exclude them), and that the Internet's importance in the economy means that excluding websites from coverage would defeat the purpose of the statute. With respect to the first, Judge Komitee pointed out that non-physical businesses (for example mail-order catalogs, and television), were certainly known to Congress, and yet Congress chose not to include them; he further pointed out that Congress amended the ADA much more recently — in 2008, when the Internet was already a mature medium — and did not take any steps to clarify that non-physical businesses were included in its scope. With respect to the second point, he recognized that "considerations of policy divorced from the statute's text and purpose could not override its meaning." *Id.* at *8 (*quoting United States v. Tohono O'Odham Nation*, 563 U.S. 307, 131 S. Ct. 1723, 1731, 179 L.Ed.2d 723 (2011).)

*Winegard*'s holding that Title III cannot be interpreted to apply to stand-alone websites is not an outlier; other courts in this Circuit have held the same. *See Suris v. Gannett Co.*, 2021 WL 2953218, at *2 (E.D.N.Y. July 14, 2021) (dismissing an ADA lawsuit against a newspaper's purportedly inaccessible website because "even liberally construed" the court could not find that a stand alone website falls within any of the twelve statutory categories of places of public accommodation); *Martinez v. MyLife.com, Inc.*, 2021 WL 5052745, at *3 (E.D.N.Y. Nov. 1, 2021)(website that does not serve as an adjunct to a brick-and-mortar business and has no public-facing, physical retail operations is not a place of public accommodation).

Moreover, while there is admittedly a circuit split on the issue, at least *five* Circuit Courts have also expressly held that Title III of the ADA only applies to physical businesses. In *Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3rd Cir. 1998), the plaintiff sued the insurance company that provided insurance benefits to her through her employer. But because she received her benefits through her employer, she had no "nexus" to the insurance company's office, and because "the plain meaning of Title III is that a public accommodation is a place," the ADA did not protect her from "discrimination unrelated to places." *Id.* at 612-613. Importantly, the Third Circuit found no ambiguity in the ADA's definition of public accommodation; *Id.* at 614.

The Fifth Circuit's decision in *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530 (5th Cir. 2016) is perhaps even more applicable to the instant case. In that case, the plaintiff sued Coca-Cola for operating an allegedly inaccessible vending machine. But the court upheld the dismissal of the Title III ADA case against Coca-Cola, holding the statute to be "unambiguous" as applying only to physical places of business. *Id.* at 534-5. And the mere fact that Coca-Cola sold products to the public — just as I-Blades does — did not mean that it fit within any of the statutory definitions of a "place of public accommodation," such as a "sales establishment."[3] The Fifth Circuit also examined the legislative history and regulatory guidance and noted that every example given by House committee reports and the DOJ of the liberal construction of the ADA referred to physical places.

---

[3] The Fifth Circuit noted that the business where such a vending machine was located might well be a place of public accommodation, and therefore the ADA might impose requirements on those businesses to have accessible vending machines. But the Coca-Cola company, which was the only defendant in the case, was not operating such a physical place merely by dint of selling products to the public.

Like the Third Circuit, the Sixth Circuit rejected a similar claim against an insurance company that provided employee benefits, finding that "the clear connotation of the words in § 12181(7) is that a public accommodation is a physical place. Every term listed in § 12181(7) and subsection (F) is a physical place open to public access." *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) (characterizing an interpretation of the statute as permitting a place of accommodation to constitute something other than a physical place as "ignor[ing] the text of the statute").

The Ninth Circuit has held the same. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000)(all items listed in the statute are actual, physical places, and applying *noscitur a sociis* to find that the statute only covered such places). Later, the Ninth Circuit clarified *Weyer*, holding that a website could be covered by the ADA, but **only** because the website facilitated access to the goods and services of an actual physical place of public accommodation. *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019) (reiterating that Title III only applied to physical locations or websites with a nexus to physical locations.) And the Eleventh Circuit found Title III's statutory definition "unambiguous and clear" as only applying to "tangible, physical places. No intangible places or spaces, such as websites, are listed." *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1276–77 (11th Cir.), *vacated as moot*, 21 F.4th 775 (11th Cir. 2021). Indeed, the *Winn-Dixie* decision went even further than the other circuits, rejecting the "nexus" test between websites and physical locations as lacking any "basis for it in the statute or in our precedent." *Id.* at 1281.

Plaintiff will undoubtedly note that some courts in this district have expressly held that websites are places of public accommodation, and a small handful have found in favor of plaintiffs with respect to the precise issue here: whether a website with no nexus to any

16

public-facing physical location fits within the statutory requirement. As an initial matter, we would note that of all these cases, the only one that considers and rejects Judge Komitee's *Newsday* decision is *Romero v. 88 Acres Foods, Inc.*, 2022 WL 158686 (S.D.N.Y. Jan. 18, 2022). The *88 Acres Foods* case did — unlike many of the prior cases to consider the issue — examine the text of the applicable statute, and (in contrast to *Newsday* as well as the Third, Fifth, Sixth, Ninth, and Eleventh Circuits) found it ambiguous. But it did so almost solely based on the fact that "travel service" could in theory be a non-physical place. But (as Judge Komitee noted in *Newsday*) there is no reason to read that term in such a fashion, particularly given that it is surrounded by words that are *indisputably* physical places. ("a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment") (Note that at one point the *88 Acres Foods* decision accidentally uses the phrase "travel service**s**," which sounds more like an intangible commercial offering. But the actual statutory phrase is "a… travel service," which would most reasonably be read as a single physical business — especially in 1990, when the statute was enacted.)

After finding that ambiguity, the *88 Acres Foods* case relied on a policy argument: that it would be "absurd" to distinguish between shopping at Whole Foods in-store and Whole Foods online. But even if that conclusion is valid, it is not even the relevant question, since Whole Foods' website *does* have a nexus to a brick-and-mortar location. The interpretation of the ADA being urged by defendant herein, as well as the *Newsday* court and five Circuit Courts of Appeal, is about distinguishing between Whole Foods in-store/online on the one hand and, for example, eBay.com on the other. (Or, in this case, i-blades.com) The *88 Acres*

*Food* court also relied on isolated snippets of legislative history not part of the statute, expressing a view of the importance of eliminating discrimination. But as the Supreme Court has repeatedly cautioned, "no legislation pursues its purposes at all costs." *CTS Corp. v. Waldburger*, 573 U.S. 1, 134 S.Ct. 2175, 2185, 189 L.Ed.2d 62 (2014)(reminding that it is error to use the proposition that remedial statutes should be interpreted liberally as a substitute for a conclusion grounded in the statute's text and structure." *See also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725, 198 L. Ed. 2d 177 (2017)(calling it "mistaken" for a court to "assume" that "'whatever' might appear to 'further[ ] the statute's primary objective must be the law.'") Applying that principle, the Second Circuit has instructed that, even in the context of anti-discrimination law, "We may not, in the name of advancing general aims, ignore Congress's choice to carefully circumscribe the universe of 'unlawful employment practices.'" *Cooper v. New York State Dep't of Lab.*, 819 F.3d 678, 682 (2nd Cir. 2016).

Congress knows how to write broad language when it chooses, and it seems odd to suggest that Congress would have carefully delineated twelve categories of business to which the ADA applies, when it could have used a catchall phrase such as "all businesses engaged in interstate commerce" if it actually wanted to ensure that the statute's coverage was universal. Defendant respectfully suggests that this Court should heed the Second Circuit's admonition in *Cooper*, find the text of the statute unambiguous, and should not resort to policy arguments to expand the scope of the ADA without express legislative authorization. As www.i-blades.com has no physical location, it is not within the statutory definition of a place of public accommodation, and plaintiff has failed to state a claim against it under the Americans with Disabilities Act.

**V.    Defendant is entitled to summary judgment on plaintiff's city claims for the same reasons it is entitled to summary judgment on his ADA claims.**

In general, disability discrimination claims under the parallel state and city disability discrimination laws are evaluated under the same standards as the ADA. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2nd Cir. 2000); *Range v. 535 Broadway Grp. LLC*, 2019 WL 4182966, at *6 (S.D.N.Y. Sept. 3, 2019)(failure to state a claim under the ADA means that NYSHRL and NYSCRL claims also fail.) Alternatively, having granted summary judgment with respect to plaintiff's only federal claim in this case, this Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims and dismiss them pursuant to 28 U.S.C. § 1367(c). *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2nd Cir. 2006) (in the usual case in which all federal-law claims are eliminated before trial, courts should decline jurisdiction over the non-federal claims).

**VI.    Plaintiff is not entitled to a recovery of  "civil penalties and fines" or punitive damages under the NYCHRL.**

Even if plaintiff had standing and had adequately established an injury in fact, and even if Title III of the Americans with Disabilities Act covered defendant's intangible business, plaintiff would not be entitled to much of the relief he seeks. Plaintiff states that he seeks to recover "civil penalties and fines" pursuant to the NYCHRL. But he is not entitled to such. Civil penalties and fines under the NYCHRL are payable to the *city*, not to a private plaintiff. NYC Admin Code. Title 8, Ch. 1, § 8-127(a).("Any civil penalties recovered pursuant to this chapter shall be paid into the general fund of the city.")

Plaintiff further seeks punitive damages, but the standard for obtaining that relief is high. The New York Court of Appeals explained that punitive damages require conduct that "goes beyond mere negligence"; they are available only for those who have "engaged in

discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" *Chauca v. Abraham*, 30 N.Y.3d 325, 334, 89 N.E.3d 475, 481 (2017)(*quoting Home Ins. Co. v. American Home Prods. Corp.*, 75 N.Y.2d 196, 203–204, 551 N.Y.S.2d 481, 550 N.E.2d 930 (1990))(rejecting the notion that a mere showing of discrimination made punitive damages automatically available). Here, though, Mr. Monegro has no facts to support any such heightened standard. Plaintiff has no evidence to suggest that defendant was even *aware* of any obligations under the ADA or NYCHRL, let alone that it refused to act on those obligations.  There is nothing to suggest that defendant's purported website violations had a "high degree of moral culpability which manifests a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." *Id.* at 479. There is no evidence, for instance, that defendant refused to remedy violations after those violations were brought to defendant's attention.  Thus, even if such violations were established sufficiently to to support liability for a violation of the applicable law, *Chauca* <u>expressly</u> rejected the notion that punitive damages are available "whenever liability, vicarious or direct, is demonstrated." *Id.* at 480.  *See Suris v. Collive Corp.,* 2022 WL 542987, at *6 (E.D.N.Y. Jan. 10, 2022), *report and recommendation adopted*, 2022 WL 541765 (E.D.N.Y. Feb. 23, 2022) (denying request for punitive damages because generic pleading of failure to make site accessible does not establish willful or wanton negligence or recklessness).

## <u>CONCLUSION</u>

For the reasons set forth above, this Court should grant summary judgment to defendant.

Respectfully submitted,

20

By: _____

David Stein

Dated: July 8, 2022