**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FRANKIE MONEGRO,                              :

                    Plaintiff,       :      MEMORANDUM DECISION
                                :         AND ORDER

     -against-                          :

I-BLADES, INC.,                               :      21 Civ. 3093 (GBD) (SN)

                  Defendant.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GEORGE B. DANIELS, United States District Judge:

Plaintiff Frankie Monegro commenced this putative class action against Defendant I-Blades, Inc., alleging that Defendant violated the Americans with Disabilities Act, 42 U.S.C. 12181 *et seq.* ("ADA") and the New York City Administrative Code § 8-107 ("NYCHRL") by creating and maintaining a website that was not equally accessible to blind and visually-impaired consumers. (*See generally*, First Amended Complaint ("FAC"), ECF No. 14.) Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of Plaintiff's claims on the grounds that the ADA does not apply to its website and that, even if it did, Plaintiff lacks standing and his claims are moot. (ECF Nos. 40, 43.) Defendant also moves for summary judgment on damages, seeking a ruling that Plaintiff is not entitled to civil penalties or punitive damages under the NYCHRL. (*Id.*) Defendant's summary judgment motion seeking dismissal of Plaintiff's claims is DENIED. Defendant's motion to preclude recovery of civil penalties and punitive damages is GRANTED.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Frankie Monegro is a visually-impaired, legally blind resident of the State of New York who requires a screen-reading software to access website content on his computer. (Pl.'s Counterstatement to Def.'s Rule 56.1 Statement ("Pl.'s Counterstatement"), ECF No. 50–1, ¶¶ 15–16.) Defendant is a California-based smart phone accessory manufacturing company that owns

and operates www.i-blades.com. (*See id.* ¶¶ 1, 11.) Defendant is a purely online business; it has no brick-and-mortar location anywhere. (*Id.* ¶ 2.) At the time the events underlying this suit took place, Defendant sold its products to customers in New York. (*See id.* ¶ 7.) In 2020, for example, Defendant made $3,207.14 in sales and recorded $841.39 in net revenue from New York sales. (*Id.*) After this suit was filed, Defendant ceased sales to customers in New York. (*Id.* ¶ 9.)

On several occasions in 2021, Plaintiff visited Defendant's website to shop for phone cases. (Pl.'s Counterstatement ¶ 17.) During each visit, Plaintiff was prevented from navigating the site because the drop-down menus could not be accessed using his screen-reading software. (*Id.* ¶ 18.) The barriers Plaintiff encountered delayed his ability to access certain subsections of the site, and in some cases, prevented him from accessing those pages altogether. (*Id.* ¶¶ 19–20.)

After multiple, unsuccessful attempts to access Defendant's website, Plaintiff filed the instant action alleging violations of the ADA and NYCHRL. Plaintiff seeks injunctive relief under the ADA, compensatory damages and attorneys' fees under the NYCHRL, and a declaratory judgment that Defendant's website fails to comply with provisions of both statutes that prohibit discrimination against the blind. (FAC at 19–20.)

## II.    DEFENDANT'S SUMMARY JUDGMENT MOTION IS DENIED

Defendant moves for summary judgment on three grounds: (1) that Plaintiff's claims are moot because Defendant has stopped sales in New York; (2) that Plaintiff has not established an injury-in-fact and therefore lacks standing; and (3) that Defendant's website is not a place of public accommodation under the ADA and is therefore not required to abide by the ADA's prohibitions on disability discrimination. (*See generally*, Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s MSJ"), ECF No. 43.)

## A.    Plaintiff's Claims Are Not Moot.

Defendant first argues that Plaintiff's claims have been mooted by the company's decision to cease operations and sales in New York. The mootness doctrine derives from Article III of the Constitution and requires that an "actual controversy [] exist not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (citation omitted). Generally, "[t]he voluntary cessation of allegedly illegal activity may render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Clear Channel Outdoor, Inc. v. City of N.Y.*, 594 F.3d 94, 110 (2d Cir. 2010) (citation omitted). The Supreme Court has described the showing required to prove voluntary compliance as a "formidable burden." *Already*, 568 U.S. at 91 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

Although Defendant has engaged the services of a contractor to remediate its website, (Pl.'s Counterstatement ¶ 14), there is no suggestion, let alone evidence, that remediation has actually been achieved and Defendant has "completely and irrevocably eradicated" the alleged violations.[1] Nor can it be said that there is no reasonable expectation the violation can reoccur. Defendant simply ceased sales in New York after it was sued by a New York plaintiff and urges this Court that this renders Plaintiff's case moot. Not so. The Supreme Court has established that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. *See City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n. 10 (1982) ("Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant ... free to return to his old ways") (citation omitted). Otherwise, "a defendant could

---

[1] Defendant's only representation on this issue is that it "certainly does not concede" that the "barriers ha[ve] not been remedied." (Def.'s MSJ at 5.)

engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already*, 568 U.S. at 91. The evidence of Defendant's low volume of sales in New York does not, as Defendant urges, establish that Defendant has no incentive to resume business in New York, particularly here where, as a purely online business, the costs of doing so are minimal or perhaps even non-existent.[2]

In short, Defendant has not met its "formidable burden" to show that it could not reasonably be expected to resume its sales in New York. Accordingly, Plaintiff's claims are not moot.

**B.    Plaintiff Has Standing.**

Defendant next argues that Plaintiff lacks standing to pursue his ADA claim because he did not suffer an injury-in-fact. In the context of the ADA, the Second Circuit has previously found standing "where (1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [business] to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013). Whether an ADA plaintiff intends to return to a place of public accommodation is a fact-specific inquiry. *See e.g., id.*

The parties' dispute is over the third prong of *Kreisler*. Defendant argues that Plaintiff cannot demonstrated a plausible intention to return to Defendant's website, and thus has not shown evidence of future injury to establish standing for prospective relief under the ADA. Contrary to Defendant's suggestion, Plaintiff raises a genuine issue of fact with respect to this issue. In an

---

[2] This Court takes additional note that Defendant has provided no sales data for other jurisdictions. Without comparative data of this sort, there is simply no way to tell whether Defendant's sales in New York are actually low compared to other jurisdictions. To the contrary, Defendant's claim that it is "a small company" with a "very low sales volume" overall, (Def.'s MSJ at 2), suggests that its New York sales may be on par with Defendant's business in other states.

4

affidavit submitted with his opposition papers, he avers that he has been "deterred from returning" to Defendant's website to try to make a purchase by reason of the difficulties in accessing the site he previously encountered. (Pl.'s Aff. in Opp. to Def.'s MSJ, ECF No. 50–3 ¶ 9.) The Second Circuit has made clear that "deterrence constitutes an injury under the ADA." *Kreisler*, 731 F.3d at 188. Plaintiff has also demonstrated an interest in the specific products Defendant offers, which increases the likelihood of his return. (*Id.* ¶¶ 10–11.)

Defendant clearly believes that Plaintiff has no intention of returning to the site and is not interested in doing so, but Defendant offers no evidence to support this view. While Defendant may be right, this is not the proper stage to resolve such a dispute. To survive summary judgment, Plaintiff need only show that there is a material issue of fact regarding standing. *See e.g., Access 4 All, Inc. v. Trump Intern. Hotel and Tower Condo.*, 458 F.Supp.2d 160, 168 (S.D.N.Y. 2006) (denying summary judgment because "[w]hether or not [Plaintiff] in fact will return to Trump Tower and face discrimination is for the factfinder, not the Court on a summary judgment motion, to decide."). Plaintiff's assertions of deterrence and interest raise a genuine issue of material fact, and it is not this Court's job to determine their veracity on a motion for summary judgment.

## C.    The ADA Covers Private Commercial Websites Like I-Blades.com.

Defendant also claims that the ADA does not apply to its website. Title III of the Americans with Disabilities Act states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182 (a). Defendant contends that a "place of public accommodation" refers only to an actual, physical location of a business, or, at the very least, only to a commercial website with a nexus to a public-

5

facing brick-and-mortar store (as opposed to a standalone website like www.i-blades.com). Plaintiff argues that the term "place of public accommodation" encompasses commercial websites with or without a nexus to a physical place.

Neither the Supreme Court nor the Second Circuit have reached the issue whether a website constitutes a "place of public accommodation" under the ADA. The circuit courts that have are divided. The Third, Sixth, Ninth, and Eleventh Circuits have held that the term "public accommodations" is "limited to physical places," *Parker v. Metro Life Ins. Co.*, 121 F.3d 1006, 1010–11 (6th Cir. 1997), but that goods and services provided through a website can fall under the ADA where the site operator also has a physical space. *E.g., Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000). The First and Seventh Circuits, by contrast, have held that websites can be places of public accommodation, with or without a nexus to a physical space. *Carparts Distribution Center, Inc. v. Automotive Wholesaler's Association of New England, Inc.*, 37 F.3d 12 (1st Cir. 1994); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999).

This question has also created a split among district courts within the Second Circuit. *Martinez v. Gutsy LLC.*, 22 Civ. 409, 2022 WL 17303830, at *3 (E.D.N.Y. Nov. 29, 2022) (noting split among district courts). As explained by the *Martinez* court, the vast majority of courts in this circuit have held that commercial websites qualify as places of public accommodation independent of a nexus to a physical space. *See id.* (collecting cases); *Romero v. 88 Acres Foods, Inc.*, 580 F.Supp.3d 9, 19 (S.D.N.Y. 2022) (same); *Tavarez v. Moo Organic Chocolates, LLC*, No. 21 Civ. 9816, 2022 WL 3701508, at *2 (S.D.N.Y. Aug. 26, 2022) ("concur[ing] with the vast majority of other judges in this District who have decided the issue that a 'place of public accommodation' includes public-facing websites that are not tethered to a physical location"); *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744, 2017 WL 6547902, at *5 (S.D.N.Y. Dec. 20, 2017).

6

This Court joins the growing number of courts within the Second Circuit in holding that a commercial website qualifies as a "place of public accommodation" within the meaning of the ADA, irrespective of whether the website has a nexus to a brick-and-mortar commercial structure. Starting with the language of the statute, Title III lists many types of public accommodations. This Court notes, as have several others,[3] that the list comprises mostly physical locations but also includes certain "services" without indicating whether those services must be tied to a physical location. "Travel service" is one example. 42 U.S.C. § 12181(7). As other courts have noted, the inclusion of such services suggests that the term "place of public accommodation" cannot be limited to physical places. *See e.g., Tavarez*, 2022 WL 3701508, at *3. Indeed, "the important quality public accommodations share is that they offer goods or services to the public, not that they offer goods or services to the public at a physical location." *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 573–74 (D. Vt. 2015).

The ADA's clearly-defined purpose also supports interpreting the statute to apply to websites. For example, the ADA provides that "physical or mental disabilities [should] in no way diminish a person's right to fully participate in *all aspects of society*." 42 U.S.C. § 12101(a)(1) (emphasis added). Considering the ubiquity of today's e-commerce,[4] and the Internet's place as

---

[3] *See e.g., Romero*, 580 F.Supp.3d at 18; *Tavarez*, 2022 WL 3701508, at *3. Even the few courts within the Second Circuit to find that the term "public accommodation" covers only physical places have acknowledged that at least one public accommodation listed in the statute ("travel service") is not a physical space. *See, e.g., Martinez v. MyLife.com*, No. 21 Civ. 4779, 2021 WL 5052745, at *2 (E.D.N.Y. Nov. 1, 2021) ("Of the fifty specific examples of businesses contained within the ADA's definition of 'public accommodation', at least forty-nine indisputably relate to physical spaces.").

[4] United States retail e-commerce sales for 2022 reached an estimated $1.03 trillion, and e-commerce now accounts for more than twenty percent of global retail sales. U.S. Dep't of Commerce, U.S. Census Bureau News, Quarterly Retail E-Commerce Sales, 4th Quarter 2022, Feb. 17, 2023, https://www.census.gov/retail/mrts/www/data/pdf/ec_current.pdf; Marina Pasquali, *E-commerce worldwide – statistics & facts*, Statista, Feb. 27, 2023 https://www.statista.com/topics/871/online-shopping/#topicOverview.

7

the "economic and social mainstream of American life," *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001), excluding websites and online businesses from the ADA would severely frustrate Congress's intent that individuals with disabilities be able to fully enjoy the goods and services available to members of the general public. A more narrow construction would also be inconsistent with the statute's legislative history, which reveals Congress's expectation that the statute would be responsive to developments in technology. *See e.g.*, H.R. Rep. 101–485, 108, U.S.C.C.A.N. 303, 391 (1990) (House Committee Report providing, "the Committee intends that the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times"). To limit the ADA's reach to physical locations and ignore the Internet—the most decisive technology of our time—would clearly run afoul of Congress's hope that the statute would encompass evolving science. In light of the legislative history, the ADA should be read to "reflect[ ] an intentional effort to confer the flexibility necessary to forestall ... obsolescence." *Del-Orden*, 2744, 2017 WL 6547902, at *10 (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 532 (2007)).

Accordingly, Defendant's website falls within the meaning of a "place of public accommodation" in Title III of the Americans with Disabilities Act.

### III.    Plaintiff is Not Entitled to Civil Penalties or Punitive Damages Under the NYCHRL.

Finally, Defendant asks this Court to deny supplemental jurisdiction over Plaintiff's NYCHRL claim. Because the ADA applies to Plaintiff's claims, Defendant's request is denied. Further, because the NYCHRL is more liberal than the ADA, and "a claim is automatically stated under the NYCHRL if it is stated under the federal [] statute[]," *Chalas v. Barlean's Organic Oils, LLC*, No. 22 Civ. 04178, 2022 WL 17156838, at *4 (S.D.N.Y. Nov. 22, 2022), the NYCHRL applies to this case, and Defendant is not entitled to summary judgment on Plaintiff's city claim. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013)

(NYCHRL establishes a "one-way ratchet, by which interpretations of [] federal civil rights statutes can serve only as a floor below which the City's Human Rights law cannot fall").

Plaintiff, however, is not entitled to civil penalties or punitive damages under the NYCHRL.[5]  As Defendant notes, civil penalties—as opposed to compensatory damages—are payable to the City, not to private plaintiffs.  *See In the Matter of Commission On Human Rights Ex Rel. Steven B. Nieves v. Gilbert Rojas*, 2019 WL 2252369, at *1 (N.Y.C. Comm. Hum. Rts., May 16, 2019) (awarding compensatory damages to plaintiff and "civil penalties to the City of New York").  Punitive damages are available under the NYCHRL only where "the wrongdoer's actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard."  *Chauca v. Abraham*, 30 N.Y.3d 325, 329 (N.Y. 2017).  Here, the conduct described simply does not rise to that level.  Plaintiff is therefore not entitled to punitive damages.

## IV.    CONCLUSION

Defendant's motion to preclude Plaintiff from recovering civil penalties or punitive damages under the NYCHRL, (ECF No. 40), is GRANTED.  Defendant's motion for summary motion is otherwise DENIED.

The Clerk of Court is directed to close the open motion accordingly.

Dated:  March 14, 2023
        New York, New York

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

---

[5] Plaintiff's failure to oppose Defendant's motion as to damages is independent grounds for this Court's ruling.  *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016).